# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ERIC EHMANN,

      **Plaintiff,**

v.                                    **Case No.  8:07-cv-2197-T-30EAJ**

CONTINENTAL CASUALTY
COMPANY,

      **Defendant.**

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendant Continental Casualty Company's Dispositive Motion for Summary Judgment With Statement of Undisputed Material Facts and Memorandum of Law in Support Thereof (Dkt. #13), Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment (Dkt. #19), Plaintiff's Dispositive Motion for Summary Judgment With Incorporated Statement of Undisputed Facts and Memorandum (Dkt. #15), and Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. #18).  The Court, having considered the cross-motions, responses, memoranda, administrative record, exhibits, complaint, and being otherwise advised in the premises, concludes that Defendant's motion for summary judgment should be denied and Plaintiff's motion for summary judgment should be granted in part and denied in part as stated herein.

# I.     Relevant Background Facts.

This action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiff Eric Ehmann ("Plaintiff" or "Ehmann") seeks to overturn Defendant Continental Casualty Company's ("Defendant" or "Continental") decision, as a claim administrator of an employee welfare benefit plan, to deny his claim for long term disability ("LTD") benefits. Ehmann was a participant in an employee welfare benefit plan (the "Plan") maintained by his employer, Georgia-Pacific Corp. ("Georgia-Pacific"). The terms of Ehmann's LTD coverage are set forth in a Group Long Term Disability Policy and Certificate, Policy No. SR-83117901 (the "Policy").[1] Eligibility for coverage under the Policy was conditioned on being "an active full-time hourly employee of Green Bay West, Muskogee, and Savannah" earning a specified minimum hourly wage.[2]

The Policy provided a monthly LTD benefit to participants who became disabled and remained so beyond the applicable elimination period. Eligibility for LTD benefits is conditioned upon the claimant submitting "proof of disability," including "objective medical findings" establishing the claimed disability, as well as the restrictions and limitations preventing the claimant from performing his or her regular occupation.[3]

---

[1] The Effective Date of the Policy was October 1, 2000. The Anniversary Date of the Policy was Oct 1st.

[2] *See* Dkt. #14-2, H3.

[3] Dkt. #14-2, H12. "Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s)."

The Policy defines "disability," in pertinent part, as follows:

**How Do We Define Disability?**
Disability or Disabled means that You satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.

**Occupation Qualifier**
"Disability" means that during the Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
1.     Continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
2.     Not working for wages in any occupation for which You are or become qualified by education, training or experience.

After the Monthly Benefit has been payable for 24 months, "Disability means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
1.     Continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and
2.     Not working for wages in any occupation for which You are or become qualified by education, training or experience.[4]

The Policy requires a claimant to submit written proof of loss within ninety (90) days after the end of the Policy's Elimination Period. The Elimination Period is one hundred and eighty (180) days.[5] Pursuant to the Policy, "No legal action of any kind may be filed against Us [Continental]: (1) within the 60 days after proof of Disability has been given; or (2) more than 3 years after proof of Disability must be filed, unless the law in the state where You [claimant] live allows a longer period of time."[6] The record shows that Plaintiff lived in

---

[4] Dkt. #14-2, H6.

[5] *See id.*, H3.

[6] *Id.*, H13, Paragraph entitled "Legal Actions."

Wisconsin through at least April 15, 2003. At some point after April 15, 2003, Plaintiff moved to Florida.[7]

In August of 2001, Ehmann was employed with Georgia-Pacific as a full-time Power Plant Maintenance Operator. According to a Physical Demands Analysis form completed by Ehmann's supervisor, Ehmann's job required him to work twelve hour shifts doing heavy manual labor tasks, including: loading coal at a coal-fired boiler house, lifting and carrying 80 pound lime bags at least six times a day, opening check valves requiring approximately 50 pounds of pressure, performing on-line repairs to keep equipment running, standing six hours a day and walking 4 hours a day.[8] In response to the question "How can this job be modified and for how long?" Ehmann's supervisor states, "It [job] cannot be modified."

On August 19, 2001, Ehmann experienced a fall at his home and sustained a fracture injury to his left elbow. On August 21, 2001, he made a claim for short-term disability ("STD") benefits under the Plan. Ehmann's STD claim was approved and Continental paid STD benefits to him for the maximum period payable under the Plan, through February 18, 2002.

On October 17, 2001, Ehmann underwent radial head implant surgery on his left elbow. The surgery was performed by Rick Papandrea, M.D., an orthopedic surgeon. A

---

[7] In the Complaint, Plaintiff alleges that he is currently a Florida resident. Additionally, in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff argues that he "was a resident of Florida at the time he filed this action." Dkt. #19. The record is void of information as to the exact date Plaintiff moved to Florida.

[8] Dkt. #14-5, H222.

postoperative imaging study on the same date showed "satisfactory alignment" with "no bone destructive process" identified.[9]  The Operative Report states, in pertinent part:

> The risks and benefits were discussed including but not limited to: persistent stiffness, limited range of motion, need for further surgery, infection, nerve injury.
>
> * * *
>
> Because of an area of chronic eczema on the posterior aspect of the elbow, a straight lateral skin incision was made.[10]

On October 22, 2001, Ehmann was examined by Dr. Papandrea, who found that Ehmann was "doing well without any significant complaints."[11]  On October 29, 2001, Dr. Papandrea observed that Ehmann was "[d]oing well with no complaints," although he had "some stiffness as expected" and his range of motion was "limited as expected."[12]

On November 12, 2001, Continental received an Attending Physician's Statement from Dr. Papandrea, who stated that Ehmann was unable to work from October 17, 2001 to date.  Dr. Papandrea also stated that Ehmann's "[p]rognosis for return to work" was "1-3 months."[13]

In November and December of 2001, Ehmann underwent physical therapy.  His physical therapy records note that Ehmann experienced pain and soreness after surgery and during physical therapy, but appeared to be making progress and feeling better as time went

---

[9] Dkt. #14-4, H160.

[10] Dkt. #14-2, H149.

[11] Dkt. #14-3, H144.

[12] Dkt. #14-3, H143.

[13] *Id.*

on.[14]  Increased range of motion was indicated on physical therapy assessments, however, records do not reflect that Ehmann regained total range of motion prior to discharge.

Continental's "Claim Analysis Record" includes notes dated December 3, 2001, which state:

> Received return call from Kay Roberts [Ehmann's physical therapist], answering v/m. EE's ROM is only 40-100 degrees. (Normal 0-150.) Arm is very weak and they can't start strengthening until the ROM is improved. His bone was rotated 180 degrees and had to be repositioned back to normal. EE may have ROM back by the middle of 2/02, but not his strength. It may take up to 18 months before arm returns to normal. EE may need a titanium replacement. DCM Impression: EE is still receiving therapy, arm is weak and ROM has the arm in a bent position. Arm may not strenght [sic] to perform the 80 lbs lifting, 50 lbs push/pull required by job duties of main operator.[15]

On January 7, 2002, Ehmann's physical therapist advised Dr. Papandrea that Ehmann had last been seen for therapy on December 14, 2001. The therapist further advised Dr. Papandrea that Ehmann had cancelled a few appointments over the holidays and had not rescheduled.

On February 26, 2002, Continental interviewed Ehmann by telephone as part of its assessment of his eligibility for LTD benefits. Ehmann stated that he was unable to move his left arm and that his elbow felt "worse than before surgery."[16]  Ehmann stated that he had not had any medical treatment from November 2001 through February 2002. Ehmann further stated that he was "bedridden" all day and night due to pain in his arm and back. Ehmann

---

[14] *See* Dkt. #14-3, H122-140.

[15] Dkt. #14-3, H84-85.

[16] Dkt. #14-4, H185.

told Continental that he was told by Dr. Papandrea that he would be out of work for 18 months.[17]

On March 22, 2002, Ehmann submitted a letter to Continental stating:

> Enclosed is physical therapy records from November and December 2001. Also there is a current Dr. statement that I'm unable to work at all. With all the different types of injuries I have from my accident last August 19, 2001, I know I will always be disabled.
> Is this all the information you need to start my long term disability? Please contact my employer when you start me on long term disability from February 18, 2002 to indefinite.[18]

Ehmann enclosed a form[19] completed by Paul Thompson, M.D. dated March 11, 2002. Dr. Thompson stated that he treated Ehmann on March 11, 2002, and that Ehmann was "unable to work."[20]

On March 27, 2002, Ehmann's treatment records were reviewed on behalf of Continental by a Nurse Case Manager ("NCM"). The NCM found that: (1) the physical therapy records showed decreased pain and increased range of motion in December 2001; (2) Ehmann had not been evaluated by Dr. Papandrea since October 29, 2001; (3) Ehmann's claim of being "bedridden" was not reasonable since his other extremities were noted to be fully functional; and (4) Ehmann's claim of disability was inconsistent with his physical therapy records.

---

[17] *Id.*

[18] Dkt. #14-3, H116.

[19] The form was apparently provided to Ehmann by Continental.

[20] Dkt. #14-3, H117.

On April 9, 2002, Continental notified Ehmann of its determination that LTD benefits

were not payable, stating, in pertinent part:

We are contacting you with regard to your claim for Long Term Disability.

"Disability means that during the Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
•     continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
•     not working for wages in any occupation for which You are or become qualified by education, training or experience.

In addition, we also require:

•     Proof that you are receiving appropriate and regular care for your condition from a doctor, who is someone other than you or a member of your immediate family, whose specialty or expertise is the most appropriate for you disabling condition(s) according to Generally Accepted Medical Practice.
•     Objective medical findings which support your disability. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s).
•     The extent of your disability, including restrictions and limitations which are preventing you from performing your regular occupation.

Your last day worked at Georgia Pacific was on 8-17-01. You are claiming a disability from occupation as a Maintenance Operator as of 8-21-01 due to left elbow fracture. Your job duties involve frequent standing/walking, bending, climbing, pushing/pulling, and grasping.

Benefits were approved through your Short Term Disability maximum period payable, 2-18-02, as you underwent surgery on 10-17-01.

After making several attempts to contact you, we sent you a closure letter dated 2-20-02. You contacted our office on 2-26-02 for a status on your claim. You stated you felt more pain than before surgery. You have severe pain in your lower back and ankles. You claim that there is no movement or strength in your left arm and you are unable to bend, flex, or lift with this arm. You

indicated you live alone, cook microwavable or instant meals, and do not perform any outdoor chores or housecleaning. You stated you are doing your physical therapy exercises daily. You also stated you have trouble with your activities of daily living and are bedridden for most of the day.

* * *

We have carefully reviewed all the medical information in your file. Your reported symptoms are disproportionate to the medical information received. The medical evidence presented for review does not support a functional impairment to the degree that it would prevent you from performing the material and substantial duties of your occupation as a Maintenance Operator. Additionally, the lapse in treatment from 10-30-01 through 3-10-02 supports your condition did not necessitate Appropriate and Regular Care from a Doctor. Therefore, further benefits have been denied.

If you disagree with our decision, you have the right to appeal under regulations specified by the Employee Retirement Income Security Act (ERISA) 1974 as amended.[21]

* * *

On June 22, 2002, Ehmann appealed the LTD benefits decision, stating, in pertinent part:

I am permanently disabled with my injuries from my accident on August 19, 2001. Also I have a degenerative disease that was caused from the trauma of the accident.

I have applied and will be getting social security disability.[22]

Ehmann did not include any other documents with his appeal letter.

On August 13, 2002, Continental notified Ehmann of the denial of his appeal stating,

in pertinent part:

While we understand that you may have needed a period of time to recover after surgery (10/17/01), the evidence showed that there was significant improvement of your elbow to almost normal by 12/14/01. There was no further treatment or physician office visits noted after 12/14/01 to indicate that your condition worsened. Therefore, the evidence presented does not support

_____

[21] Dkt. #14-3, H105-107.

[22] Dkt. #14-3, H91.

a continuous functional impairment that would preclude you from performing your occupation beyond 12/14/01, and CNA provided benefits generously through 2/18/02, no further benefits are payable.

Therefore, after comprehensive review of the medical evidence, the decision that was made by CNA was correct and is being upheld. We are sorry that our ruling could not be more favorable; however, we must abide by the medical evidence and the policy provisions. You have exhausted all administrative remedies offered by the appeals process. This decision is final and binding.[23]

On October 3, 2002, Continental's NCM spoke to Ehmann. Record of telephone call, reflects Ehmann's subjective complaints of open lesions all over his body and continued disability.[24]

On January 16, 2003, Ehmann submitted a letter from Bruce Fenster, M.D., dated January 10, 2003. Dr. Fenster's letter states:

Mr. Ehmann is a 42-year-old male, as I am sure you are aware, who was injured and fractured his left elbow in August 2001 with surgical repair in October 2001. Since that time he states he has had continued problems with the elbow, although, as you are aware, he did not followup reliably with his surgeon. His primary care doctor at my office is usually Dr. Sundlass who felt that the patient had psoriatic arthritis in addition to his elbow discomfort and he had problems with his knees and back. There was a discussion of rheumatological evaluation but that was never done. I would certainly recommend a rheumatology evaluation to help determine his degree of permanent disability.

At this time, however, I do feel that with his symptoms and his having some synovitis, that he is not able to go back to work and may be permanently disabled pending on what can be done for his arthritic problems. He was placed on Methotrexate last year for a short period of time but also did not

---

[23] Dkt. #14-3, H77-78

[24] Dkt. #14-3, H76.

followup following the initiation of that medication, and did not initiate any new medication with my one evaluation of him on January 3 of this year.[25]

On January 22, 2003, Continental acknowledged the receipt of Ehmann's January 16th letter, provided a summary of the reasons his appeal was denied, and finished the letter by stating, "You have exhausted all administrative remedies offered by the appeals process. This decision was final and binding."[26]

On March 27, 2003, Ehmann submitted another letter from Bruce Fenster, M.D., dated March 27, 2003. Dr. Fenster's letter states:

> I am once again corresponding regarding Mr. Ehmann's ability to seek gainful employment. He continues to have problems with decreased strength and range of motion in his left arm with significant diffuse joint discomfort. This is most likely due to psoriatic arthritis, and he has fairly extensive psoriasis as well. He has sufficient joint pain and disability from his left arm that he would be unable to return to his previous employment, and these have all worsened since his accident of October 2001. He is unable to do significant lifting and manual labor at this time, and at this point I do not know if things will improve in the future.[27]

On May 12, 2003, Continental acknowledged the receipt of Ehmann's March 27th letter and stated, in pertinent part:

> Per your request, we did provide you a complete copy of your disability claim file on February 14, 2003, and did allow you the opportunity to provide further additional information that you felt would alter CNA's appeal decision of August 13, 2002. In follow up to our telephone conversation of April 18, 2003, we have received the additional information, consisting of a letter from Dr. Bruce Fenster dated March 27, 2003. We have reconsidered this

---

[25] Dkt. #14-2, H69.

[26] Dkt. #14-2, H67.

[27] Dkt. #14-2, H61.

information, but find that it does not alter the prior decisions; therefore, your file remains closed.

* * *

We are not disputing your pain complaints or that you may have some residuals of your left elbow injury, but without detailed medical findings that are directly related to the period of time following your last physical therapy visit of December 14, 2001, and over the past year, we do not find evidence of a functional loss or impairment that would have prevented you from performing your regular occupation beyond February 18, 2002 (when Short-Term Disability benefits ended). As you were not found to be disabled for Long Term Disability benefits and did not return to work, any subsequent disabilities or worsening of your condition would not be covered under this policy. Your coverage ends when you are no longer an eligible member per the policy.

Therefore, we find that the denial of Long Term Disability benefits remains as proper and correct based upon the evidence presented. As you were informed on August 13, 2002, all administrative remedies offered by CNA's appeal process were exhausted. Should you remain in disagreement with CNA's denial of Long Term Disability benefits, you do have civil remedies available following an adverse appeal decision. This completes our final review of your disputed disability claim.[28]

On December 3, 2007, Ehmann filed this action for recovery of LTD benefits.

## II.    Standard of Review.

### A.    Summary Judgment.

ERISA benefit denial cases present courts with unique considerations. Hence, the "standard" summary judgment considerations do not apply. "Where the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists do not apply." *See*

---

[28] Dkt. #14-2, H57-58

*Crume v. Metropolitan Life Ins.*, Co., 417 F.Supp.2d 1258, 1272 (M.D. Fla. 2006). Instead, the Court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits. *Crume*, 417 F.Supp.2d at 1273.

## B. ERISA Framework.

Since ERISA does not expressly set forth the appropriate standard of review for actions challenging benefit eligibility determinations under 29 U.S.C. § 1132(a)(1)(B), the district court examines the plan documents to determine the applicable standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). In the past, the Eleventh Circuit has directed district courts to follow a "well-defined series of steps" in reviewing a decision to deny disability benefits in an ERISA case. *Tippett v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1231-32 (11th Cir. 2006). District courts followed the following six step analysis in reviewing an administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, then end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.[29]

As to the sixth step in this analysis, however, the Eleventh Circuit recently eliminated the heightened standard of review applicable when a conflict of interest is present. *Doyle v. Liberty Life Assurance Co. Of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008).[30] In *Doyle*, the Eleventh Circuit overruled its precedent to "the extent it requires district courts to review benefit determinations by a conflicted administrator under the heightened standard." *Id.* The Court held that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* The Court further held that, "while the reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.*

This case falls under the category of ERISA cases involving a conflict of interest because Continental, as the administrator of the plan, also acts as a fiduciary and makes discretionary decisions, all while serving as the insurance company paying the claims out of its own assets. *See Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008) (holding that

---

[29] *Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352, 1356 (11th Cir. 2008), citing *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004).

[30] *See Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008) (Supreme Court implicitly overruled the heightened arbitrary and capricious review).

where plan administrator is not the employer but is itself a professional insurance company, a conflict exists). Thus, pursuant to *Glenn* and *Doyle*, this Court should consider Continental's conflict when determining whether Continental's decision was arbitrary and capricious.

Regardless of the applicable standard of review, however, the court first evaluates the claims administrator's interpretation of the plan to determine whether it is "wrong." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). "Wrong," as the Eleventh Circuit uses the term in ERISA cases, means "the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." *Id.* If the claims administrator's interpretation is "wrong," the court then decides whether "the claimant has proposed a 'reasonable' interpretation of the plan." *Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir. 1994). Even if the claimant's interpretation is reasonable, that does not mean he automatically prevails. *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 992 (11th Cir. 2001). Guided by the principle of trust law that a trustee's interpretation should not be disturbed if it is reasonable, a claims administrator's wrong interpretation is arbitrary and capricious only if it is unreasonable. *HCA Health* at 992, citing *Firestone*, 489 U.S. at 110-11. The claimant bears the burden of proving that he is entitled to benefits. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).

## III. Discussion.

### A. Limitations.

Continental argues that Plaintiff's suit is time barred by the three (3) year contractual limitation period provided in the Policy. Continental claims that pursuant to the terms of the Policy, Plaintiff's limitations period began to run on May 16, 2002 (within 270 days following the commencement of Plaintiff's period of disability beginning on August 19, 2001). Thus, Continental argues that pursuant to the "Legal Actions" provision of the Policy, Plaintiff had until May 16, 2005 (three years after May 16, 2002) in which to bring suit for LTD benefits.[31]

The "Legal Actions" provision of the Policy in question, provides:

No legal action of any kind may be filed against Us [Continental]:
1.    within the 60 days after proof of Disability has been given; or
2.    more than 3 years after proof of Disability must be filed, unless the law in the state where You live allows a longer period of time.[32]

The contractual limitations period at issue provides for a 3 year limitations period beginning on the last day that "proof of Disability must be filed." Pursuant to the Policy, proof of Disability should have been on or before May 16, 2002. Such limitations period applies "unless the law in the state where You [Ehmann] live allows a longer period of time."

In opposition, Plaintiff argues that this matter should be governed by the five (5) year limitations period for written contracts under Section 95.11(2)(b), Florida Statutes.

---

[31] Wisconsin law also provides for a three year limitations period. *See* Wis. Stat. § 631.83(1)(b).

[32] Dkt. #14-2, H13.

Additionally, Plaintiff argues that the applicable limitations period did not begin to run until all of his internal administrative remedies had been exhausted (on May 12, 2003), when Continental allowed Plaintiff the opportunity to submit further information and reconsidered Plaintiff's appeal). Under this analysis, Plaintiff had until May 12, 2008, to file suit for LTD benefits. This action was filed December 3, 2007.

At the time of Ehmann's employment with Georgia-Pacific and at the time of his injury, Plaintiff lived in Wisconsin. At some point, prior to filing this lawsuit, Ehmann moved to Florida. Defendant argues that Wisconsin law should apply since Ehmann lived in Wisconsin at the effective date of the Policy, at the time of his accident and during the internal claims process determining his entitlement to STD benefits and denial of LTD benefits. In response, Plaintiff argues that the Policy reads, in pertinent part, "in the state where you live." No other modifiers are provided. Plaintiff argues that he currently lives in Florida and lived in Florida prior to filing this action.

"ERISA does not provide a statute of limitations for suits brought under § 502(a)(1)(B) to recover benefits. Thus, courts borrow the most closely analogous state limitations period." *Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan*, 160 F.3d 1301, 1303; citing *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 n. 1 (11th Cir. 1992) (stating that "a federal court hearing a federal cause of action should borrow the forum state's statute of limitations when Congress has not expressly provided a limitations period unless a more closely analogous federal statute of limitations exists that would better serve the federal policy interests involved"). "Choosing which state statute to

borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period." *Northlake*, 160 F.3d at 1303. "Contractual limitations periods on ERISA actions are enforceable, regardless of state law, provided they are reasonable." *Id.* "An ERISA plan is nothing more than a contract, in which parties as a general rule are free to include whatever limitations they desire." *Id.*

Under Florida law, if the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous and must be interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy. *See Hyman v. Nationwide Mutual Fire Insurance Company*, 304 F.3d 1179, 1186 (11th Cir. 2002). The contractual limitations provision in question, by its own language, i.e. "unless the law in the state where You live allows a longer period of time," anticipates the potential application of a longer limitations period. Accordingly, by practical application, Florida's five year statutory limitations period is written into the Policy. Thus, this Court concludes that Florida's five year limitations period for written contracts should be applied in this matter.[33]

The parties also dispute the applicable date upon which the limitations period began to run. Defendant argues that pursuant to the Policy the limitations period began to run on the date upon which proof of disability should have been filed (May 16, 2002). In

---

[33] The Court notes that its determination may have been different if the Policy did not include language anticipating the application of longer statutory period in other states.

opposition, Plaintiff argues that the limitations period did not begin to run until all of Plaintiff's internal administrative remedies had been exhausted (May 12, 2003).

Again, the contractual limitations provision in question anticipates the potential application of an extended limitations period, depending upon the state where a claimant lives. Such extension would include an extension of the date upon which limitations would begin to run. The Eleventh Circuit has specifically held that exhaustion of administrative remedies is a prerequisite to instituting an ERISA action in a federal district court. *See Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985).[34] ERISA itself does not mandate the exhaustion of administrative remedies as a condition precedent to filing an action for violations thereof; however, courts have generally required claimants to exhaust their administrative remedies prior to instituting suit in federal court under ERISA. *Nierenberg v. Heart Center of Southwest Florida, P.A.*, 835 F.Supp. 1404, 1406 (M.D. Fla. 1993).

There is no dispute between the parties that Plaintiff's administrative remedies were exhausted. The dispute lies as to the date of exhaustion. Defendant asserts that Plaintiff's claims were exhausted on May 16, 2002 (within 270 days of August 19, 2001), which is the

---

[34] Exceptions to the exhaustion requirement exist. Exhaustion of administrative remedies is not required where: (1) it would prove futile; (2) the claimant was wrongfully denied access to review procedures; (3) irreparable harm would result by requiring exhaustion; (4) administrative remedies are inadequate; or (5) the issue involves statutory interpretation. *See Nierenberg*, 835 F.Supp. 1404, 1407 (M.D. Fla. 1993). None of these exceptions would apply in this case.

date upon which Plaintiff's proof of disability was due under the terms of the Policy.[35] In response, Plaintiff asserts that his administrative remedies were not exhausted until May 12, 2003, which is the date upon which Continental gave notice to Plaintiff that his appeal had been reconsidered, but Continental's decision to deny LTD benefits remained unaltered.[36]

The administrative record reflects that Continental initially denied Plaintiff's claim for LTD benefits on April 9, 2002. Ehmann appealed the LTD benefits decision on June 22, 2002. On August 13, 2002, Continental notified Ehmann that his appeal was denied. In the August 13, 2002 appeal denial letter, Continental states, in pertinent part: "You have exhausted all administrative remedies offered by the appeals process. This decision is final and binding."[37] If the August 13, 2002 appeal denial letter had constituted the end of Continental's consideration of Plaintiff's claim for LTD benefits, then Plaintiff's administrative remedies would have been exhausted as of August 13, 2002. However, the administrative record reflects further consideration of Plaintiff's claim by Continental.

On January 16, 2003, Plaintiff sent another letter requesting LTD benefits and included a one page letter from Dr. Fenster dated January 10, 2003, stating, in pertinent part: "At this time, however, I do feel that with his symptoms and his having some synovitis, that

---

[35] The Policy provides, in pertinent part: "The time limit for filing Your claim is that You must furnish Us with written proof of loss within 90 days after the end of Your elimination period." Dkt. #14-2, H12. Pursuant to the Policy, the length of Plaintiff's elimination period was 180 days. *See* Dkt. #14-2, H3.

[36] *See* Dkt. #14-2, H57-58.

[37] Dkt. #14-3, H78.

he is not able to go back to work and may be permanently disabled pending on what can be done for his arthritic problems."  On January 22, 2003, Continental responded to Ehmann's letter by reciting the reasons why his appeal had been denied, explaining why Dr. Fenster's letter was insufficient, and restating, "You have exhausted all administrative remedies offered by the appeals process.  This decision was final and binding."

On February 13, 2003, Ehmann requested that a copy of his claim file and the long term disability policy be sent to him.  On February 14, 2003, Continental complied with Ehmann's request.

On April 15, 2003, Ehmann sent another letter requesting LTD benefits, and included another letter from Dr. Fenster stating that Ehmann would be unable to return to his previous employment.[38]  On May 12, 2003, Continental sent Ehmann a letter stating, in pertinent part:

> Per your request, we did provide you a complete copy of your disability claim file on February 14, 2003, and did allow you the opportunity to provide further additional information that you felt would alter CNA's appeal decision of August 13, 2002.  In follow up to our telephone conversation of April 18, 2003, we have received the additional information, consisting of a letter from Dr. Bruce Fenster dated March 27, 2003.  We have reconsidered this information, but find that it does not alter the prior decisions; therefore, your file remains closed.
>
> * * *
>
> As you were informed on August 13, 2002, all administrative remedies offered by CNA's appeal process were exhausted.  Should you remain in disagreement with CNA's denial of Long Term Disability benefits, you do have civil remedies available following an adverse appeal decision.  This completes our final review of your disputed disability claim.[39]

---

[38] *See* Dkt. #14-2, H60.

[39] Dkt. #14-2, H57-58.

Accordingly, the record reflects that Continental gave Ehmann the opportunity to submit further medical records and doctor's opinions on two separate occasions after August 13, 2002. Further, the record reflects that Continental reviewed the documents provided by Ehmann and reconsidered his request for LTD benefits. Thus, the record establishes that Ehmann's internal administrative remedies were exhausted as of May 12, 2003, the last date of review and reconsideration by Continental.

Based on the foregoing analysis, the Court concludes that Plaintiff's claim is not time-barred. Accordingly, Defendant motion for summary judgment based on such argument is denied.

### B. Denial of Long Term Benefits.

#### 1. Court must determine whether decision was "wrong."

Both parties have filed cross-summary judgment motions as to whether Plaintiff is entitled to LTD benefits under the Policy. Plaintiff argues that the administrative record establishes his entitlement to LTD benefits under the Policy. Defendant argues that Plaintiff is not entitled to LTD benefits under the Policy, because Plaintiff failed to submit "any objective evidence" of an impairment that was sufficiently severe to constitute a disability within the meaning of the Policy.

In considering Plaintiff's claim, this Court must decide whether Continental's denial of benefits was "wrong." *Glazer*, 524 F.3d 1241, 1247. After reviewing the administrative record, the Court concludes that Continental's discretionary decision to deny Plaintiff's long term disability benefits was *de novo* wrong, as the record establishes that Plaintiff was

physically impaired to such a degree of severity that he could not perform the material and substantial duties of his regular occupation (Power Plant Maintenance Operator) from August 19, 2001, through at least April of 2003.

The evidence Continental relied upon in denying Plaintiff's request for LTD benefits is not persuasive. Although Continental points to statements by Ehmann of feeling better or acknowledging increased range of motion during physical therapy in November and December of 2001, examination of the administrative record as a whole reveals that Plaintiff continued to experience chronic synovitis, pain, psoriatic arthritis, swelling and range of motion limitations in his elbow as well as his knees and back. Further, the administrative record reflects several medical opinions acknowledging that Plaintiff was unable to return to his regular occupation as a result of his weakened elbow and recommending that Plaintiff undergo a rheumatology evaluation to help determine his degree of permanent disability. In addition, as of December 3, 2001, Continental's Claims Analysis Record reflected the severity of Plaintiff's condition, reporting Ehmann's physical therapist's opinion that: Ehmann's arm was very weak, it may take up to 18 months before his arm returns to normal, Ehmann may require a titanium replacement, and Ehmann's arm may not ever strengthen enough to perform 80 pounds of lifting or 50 pounds of push/pull strength required for his job duties.

The beginning of any *de novo* analysis of a disability claim is a review of the objective medical findings. The Policy states that "objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of

medicine, for Your disabling condition(s)." Plaintiff's surgical reports and physical therapy records establish that Plaintiff suffered a serious chronic injury to his left elbow. During the administrative review of Plaintiff's LTD benefits claim, Plaintiff provided at least three opinion letters and/or completed form(s) by two different doctors on various occasions (Dr. Thompson - dated March 11, 2002, Dr. Fenster - dated January 10, 2003 and March 27, 2003) stating that Plaintiff was disabled and unable to work or perform the substantial duties of his regular occupation. Examination confirmed continued problems with decreased strength, pain and range of motion of left elbow, extensive psoriasis and psoriatic arthritis in left arm, and synovitis manifested by swelling and joint discomfort in knees and back.

The subjective complaints and descriptions of pain and discomfort set forth in Plaintiff's numerous letters and phone conversations are consistent with a chronic elbow injury, synovitis, psoriasis and psoriatic arthritis. Finally, there is little evidence in the administrative record to contradict Plaintiff's representations concerning the severity of his injury or his doctors' evaluations that he was unable to perform the material and substantial duties of his regular occupation. Continental did not appoint an independent medical examiner or request treatment records from the doctors in question. Continental relies exclusively on the findings of its Claim Management Nurse who reviewed Plaintiff's administrative record and found it to be insufficient.

Accordingly, the strong weight of the evidence in the administrative record supports Plaintiff's claim that he was unable to perform the material duties of his job as a Power Plant Maintenance Operator from August 19, 2001, through at least August of 2003.

## 2. Court must determine whether decision was arbitrary and capricious.

The appropriate inquiry is whether there was a reasonable basis for Continental's decision, based upon the facts as known to the administrator at the time the decision was made. It seems that Continental emphasized certain physical therapy records and statements while de-emphasizing other records, examinations or statements that suggest a contrary conclusion. Although it is Plaintiff's burden to prove that he is entitled to benefits, Continental did nothing to actively investigate Plaintiff's claim of disability, such as request copies of treatment records from Drs. Thompson, Sundlass, or Fenster, or appoint its own independent medical examiner to examine Plaintiff in person. Without explanation, Continental disregarded each and every physician opinion letter offered by Plaintiff as proof of his disability. Continental has offered no expert opinion in opposition to those provided by Plaintiff. Instead, its decision was based on the suspicions of its Claims Management Nurse.

The Court accepts the opinions offered by Plaintiff's doctors as undisputed record evidence that Plaintiff was unable to perform his regular occupation, temporarily disabled, and therefore, entitled to LTD benefits for at least a 24 month period beginning on February 18, 2002.

Following *Glenn* and *Doyle* and after considering the administrator's conflict, the Court concludes that Continental's decision was "wrong" and arbitrary and capricious, and therefore, unreasonable. The Court finds that Plaintiff was disabled and met all conditions

precedent to receiving long term disability benefits under the Policy for the 24 months following the elimination period (the "Monthly LTD Benefits"). Accordingly, this Court awards Ehmann unpaid Monthly LTD Benefits from February 18, 2002, through February 18, 2004.

The definition of "disability" under the Policy changes after 24 months to whether the insured is continuously unable to engage in <u>any</u> occupation for which he is or becomes qualified by education, training or experience. The administrative record is devoid of medical records or other information concerning Plaintiff's current and/or intervening health status. Thus, it is impossible for the Court to make a determination regarding Plaintiff's entitlement to continued long term disability benefits. For these reasons, the Court remands this case to Defendant for the administrator: (1) to accurately determine and pay Monthly LTD Benefits to Ehmann (consisting of 24 months of Monthly LTD Benefits, plus interest); and (2) for further claim development and consideration of Plaintiff's entitlement to continued long term disability benefits under the Policy from February 18, 2004, and thereafter.

Accordingly, Plaintiff's motion for summary judgment is granted in part and denied in part as stated herein.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant Continental Casualty Company's Dispositive Motion for Summary Judgment With Statement of Undisputed Material Facts and Memorandum of Law in Support Thereof (Dkt. #13) is **DENIED**.

2. Plaintiff's Dispositive Motion for Summary Judgment With Incorporated Statement of Undisputed Facts and Memorandum (Dkt. #15) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

3. This case is **REMANDED** to Defendant for the administrator: (1) to accurately calculate and pay Monthly LTD Benefits to Ehmann (consisting of 24 months of Monthly LTD Benefits, plus interest); and (2) for further claim development and consideration of Plaintiff's entitlement to continued long term disability benefits under the Policy from February 18, 2004, and thereafter.

4. The Pre-trial Conference set for Tuesday, March 3, 2009, at 9:00 a.m. is **CANCELLED** and this case is removed from the April, 2009, trial calendar.

5. The Clerk is directed to enter **JUDGMENT** in favor of Plaintiff and against Defendant. A motion for attorneys' fees under 29 U.S.C. § 1132(g) may be submitted within the time prescribed by Local Rule 4.18(a).

6. The Clerk is also directed to **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on February 25, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2007\07-cv-2197.msj 13.wpd